IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MOUNTAIN VALLEY PIPELINE, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:20-cv-134 |
| ) | |
| 8.37 ACRES OF LAND, OWNED BY ) | By: Elizabeth K. Dillon |
| FRANK H. TERRY, JR., et al., ) | United States District Judge |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

This matter was tried to a jury who, after the close of evidence, deliberated and returned a verdict of $523,327 in just compensation owed by plaintiff Mountain Valley Pipeline (MVP) for its condemnation of easements on property owned by defendants Frank Terry, Elizabeth Terry Reynolds, and John Coles Terry (the Terrys or the landowners). (Dkt. No. 95.) Before the court are MVP's motion for judgment as a matter of law and, in the alternative, for a new trial (Dkt. No. 110) and the landowners' motion for attorney fees (Dkt. No. 103). After the hearing, the landowners filed two notices of supplemental authority. (Dkt. Nos. 120, 124.) MVP moved to strike these submissions (Dkt. Nos. 121, 125), which motions will be granted.

For the reasons stated below, the court will grant MVP's motion for judgment as a matter of law, set aside the jury verdict, and direct the entry of judgment in the amount of $261,033. The court will also conditionally grant a new trial, with the option of remittitur. The landowners' motion for attorney fees will be denied.

I. BACKGROUND

MVP has condemned easements on property owned by defendants, identified as MVP No. VA-RO-046. The subject property includes 560 acres on Poor Mountain Road in Roanoke County, Virginia. The property is improved with a two-story farmhouse, a rental dwelling, garage, storage

sheds, and an efficiency apartment. It is accessed by a private driveway.

## A. Expert Disclosures and Pretrial Motions

In his initial expert report for the landowners, real estate appraiser Dennis Gruelle notes that in 2012 the landowners entered a lease with Invenergy Wind for the development of a wind farm on the property. (Dkt. No. 12-2 at 12.) This lease followed the passing of an ordinance by Roanoke County in 2011 that permitted wind energy systems.[1] (*Id*.) Gruelle concluded that the highest and best use of the property before the taking is "for the industrial development of a wind farm or solar farm." (*Id*. at 13.) He also refers to this highest and best use as "commercial development for wind farming." (*Id*. at 29.) He then determined a pre-take value of the property and noted that "[a]ll of the comparable sales are suitable for commercial uses similar to the subject." (*Id*. at 21.) In his analysis of the value of the property after the taking, Gruelle stated that "[a]fter MVP announced its project, the Invenergy Wind deal failed." (*Id.* at 26.) Because of this, Gruelle concluded that another wind farm project was not "reasonable or probable after the installation of the MVP project as the market actions of Invenergy demonstrate the incompatibility of underground easements and wind farming." (*Id.*) Because he believed this incompatibility was not unique to wind farms, he opined that solar farming was no longer available. (*Id*. at 26, 29.) Apparently, Gruelle reached this mistaken conclusion without checking with Invenergy. Based on this error, Gruelle found that the highest and best use of the property after the taking is for a "single-family residential subdivision" or a "family subdivision" (Dkt. No. 12-2 at 26, 29).

Following MVP's disclosure of an expert rebuttal report of April Montgomery (Dkt. No. 12-4), the Director of Site Development Services for SWCA Environmental Consultants, concluding that "a wind project on the Terry property is not negatively impacted by the construction of the

---

[1] There is no mention of a lease for solar farm purposes or any County ordinance allowing solar farms.

Mountain Valley Pipeline (*id*. at 1)," Gruelle issued a new report (Dkt. No. 13-1).  In his new report and after checking with Invenergy, Gruelle reversed his opinion that the MVP project prevents development of the property as a wind farm.  (*Id.* at 1.)  In doing so, Gruelle found that the highest and best use of only a portion of the property—the northern 323 acres of the property—is a wind farm, both before and after the taking.  (*Id.* at 1, 37.)  Gruelle stated that he had now spoken with Invenergy and learned that the company abandoned the Terry lease for reasons unrelated to the pipeline.  (*Id.* at 36–37.)  Gruelle also admitted to knowing previously that defendant Frank Terry had only guessed that the pipeline negatively affected the Invenergy wind farm project.  (*Id.* at 36.)

Gruelle's second report included the above new opinion and many other new opinions.  Instead of requesting additional time to disclose expert witnesses, the Terrys asserted that Gruelle's second report was merely a supplemental report.  The court found otherwise and issued an order granting MVP's motion to exclude Gruelle's second report as an untimely-filed new report and finding that the failure to comply with the court's scheduling order was not substantially justified or harmless.  (Dkt. No. 31 at 10–13.)

**B.  Trial Testimony**

At trial, the Terrys called Gruelle as their expert on real estate valuation.  Because his second report had been excluded, the landowners sought testimony from his first report wherein he was mistaken about the pipeline affecting the highest and best use of the property.  Gruelle testified that the property was suitable for many uses.  The property had the potential for residential use (a family subdivision), timbering use, agritourism/ecotourism use, and wind and solar farming use.  (Trial transcript, Dkt. No. 100 at 41.)  He then opined that the highest and best use of the entire property before the taking was as a wind farm or solar farm, with the wind farm being the "main one."  (*Id.* at 46.)  Of course, the highest and best use of a property is the most profitable use of a

3

property. *United States v. 8.929 Acres of Land*, 36 F.4th 240, 253 (4th Cir. 2022). Gruelle testified that the value of the property before the taking was $1,900,000. (*Id.* at 86, 90.) He valued the land at $2,900 per acre, or $1,624,000, and he valued the improvements at $281,400. (*Id.*) Gruelle was not permitted to give an opinion on the value of the property after the taking or a diminution in value caused by the pipeline because, as Gruelle had recognized in his second report, the pipeline project did not affect the use of the property as a wind farm. (*Id.* at 7–8; *see also* Dkt. No. 31 at 10 (explaining that Gruelle "was mistaken and believed that the pipeline made the property incompatible for use as a wind farm").) He testified that the termination of the Invenergy project had nothing to do with the pipeline. (*Id.* at 111.)

Gruelle also testified that his comparable sales regarding the pre-take value were "reflective of the residential market" and any commercial user would have to compete with the residential market. (Id. at 56.) Despite this attempt to relate his valuation of the property for commercial/industrial uses to a residential use value, he testified to the differences between the two. He stated that the property was advantageous for green energy purposes because it has a 138 kV power line crossing the top third of the property and green energy users like to co-locate with available power lines. (*Id.* at 38.) One can assume that such a feature is not advantageous for residential purposes. He also stated that properties with multiple possible uses could command a higher price than single use properties and that wind farm users would pay equal or more than people buying a property for a family subdivision. (*Id.* at 46.) Moreover, a wind farm, as contemplated by the lease agreement between Invenergy and the Terrys, would allow the property to be income-generating as the rental rate was based on the amount of electricity produced. (*Id.* at 49.)

The Terrys then called Jared Schweitzer to testify based on an appraisal he prepared for the

4

purpose of setting the amount of security following the court's order conditionally granting immediate possession of the properties in the primary condemnation case, *Mountain Valley Pipeline LLC v. Easements to Construct*, 7:17-cv-492 (W.D. Va.) (Dkt. No. 340).[2] Schweitzer testified that the highest and best use of the property is residential. On direct examination, the Terrys asked Schweitzer to provide his percentage diminution—30%—but they did not ask him for his before-take value or his after-take value. (Dkt. No. 101 at 46–48.) On cross-examination, MVP asked Schweitzer for his before and after values. Schweitzer testified that he appraised the property as having a before-take value of $850,000 and an after-take value of $590,932. In his opinion, adding the value of the temporary easements ($1,965) results in just compensation of $261,033. (*Id.* at 49, 53.)

At the close of the Terrys' evidence, MVP moved the court for judgment as a matter of law on the ground that just compensation could not exceed the amount of Schweitzer's appraisal. The court denied MVP's motion. (*Id.* at 100–01.)

MVP called Joseph Thompson as its expert on real estate valuation. Thompson testified that residential use was the highest and best use of the property. Thompson found that the property was worth $1,200,000 before the taking. Using 12% diminution, Thompson valued the property after the taking at $1,050,000, for a difference in value of $150,000. Adding the value of the temporary easements, Thompson found total just compensation in the amount of $151,870. (*Id.* at 115.)

At the close of all the evidence, MVP renewed its motion for judgment. The court denied MVP's motion. (*Id.* at 238.)

As noted, the jury returned a verdict in the amount of $523,327.

---

[2] Immediate possession of this property was granted by order entered March 7, 2018. (Dkt. No. 593.)

## II.  DISCUSSION

### A.  Motions to Strike

Before the court considers the parties' arguments, it must determine which of the arguments are appropriately before the court.  Under the local rules of this district and the court's scheduling order, supplemental briefs or sur-reply briefs are not permitted absent leave of court.  *See* Dkt. No. 1, 11; Civil L.R. 11(c)(1). Landowners did not seek leave of court before filing their post-hearing submissions.  Moreover, while the submissions are labeled "supplemental authority," the label belies their purpose because the submissions do not contain supplemental authority.  Instead, they contain several pages of additional argument that could have been presented previously at the hearing or in the briefs filed prior to the hearing.  *See, e.g.*, *United States v. Washington*, 743 F.3d 938, 941 n.1 (4th Cir. 2014) (refusing to consider "lengthy document styled as a notice of supplemental authority" because it was filed "as a means to advance new arguments couched as supplemental authorities").

For these reasons, MVP's motions to strike will be granted.

### B.  Motion for Judgment as a Matter of Law

When, as here, the court does not grant a motion for judgment as a matter of law made under Rule 50(a) of the Federal Rules of Civil Procedure, the court "is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." Fed. R. Civ. P. 50(b).  No later than 28 days after the entry of judgment, the movant may file a renewed motion for judgment as a matter of law.  The court may allow judgment on the verdict, order a new trial, or direct the entry of judgment as a matter of law.  Fed. R. Civ. P. 50(b)(1)–(3). These rules are applicable in eminent domain cases.  Fed. R. Civ. P. 71.1(a) (stating Federal Rules of Civil Procedure apply in proceedings to condemn property by eminent domain except as

provided in Rule 71.1); *E. Tenn. Nat. Gas Co. v. 3.04 Acres*, 298 F. App'x 261, 263–64 (4th Cir. 2008) (affirming granting of motion for new trial in condemnation action).

Judgment as a matter of law is appropriate where a party has been fully heard on an issue but has failed to produce sufficient evidence for a jury to find for that party. Fed. R. Civ. P. 50(a), (b). The standard for judgment as a matter of law mirrors the standard for granting summary judgment "such that the inquiry under each is the same." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000); *see Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644 (4th Cir. 2002). A motion under Rule 50(b) "tests the legal sufficiency of a claim, that is, assesses whether the claim should succeed or fail because the evidence developed at trial was insufficient as a matter of law to sustain the claim." *Belk, Inc. v. Meyer Corp.*, 679 F.3d 146, 155 (4th Cir. 2012). The court is to "review the record as a whole" but "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves*, 530 U.S. at 151. The court cannot reweigh the evidence or consider the credibility of the witnesses and must view "all the evidence in the light most favorable to the prevailing party and draw all reasonable inferences in the prevailing party's favor." *Tools USA & Equip. Co. v. Champ Frame Straightening Equip., Inc.*, 87 F.3d 654, 656–57 (4th Cir. 1996); *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 865 (8th Cir. 2006) ("[T]he court considers all evidence in the record without weighing credibility, and makes reasonable inferences and resolves conflicts in favor of the non-moving party."). The limited review of the evidence is required by "the importance of the jury's role in trials . . . enshrined in the Seventh Amendment." *Burgess v. Goldstein*, 997 F.3d 541, 544 (4th Cir. 2021).

In the condemnation context, the Fourth Circuit looks to whether the verdict is "within the range of credited testimony." *United States v. Smoot Sand & Gravel Corp.*, 248 F.2d 822, 829 (4th Cir. 1957); *E. Tenn. Nat. Gas Co. v. 7.74 Acres*, 228 F. App'x 323, 330 (4th Cir. 2007). Other

7

courts have stated that the verdict must be "within the scope of the evidence." *United States v. 9.20 Acres*, 638 F.2d 1123, 1126 (8th Cir. 1981). "A jury verdict in a condemnation case not within the scope of the proof cannot be sustained." *United States v. 685.2 Acres*, 146 F.2d 998, 998 (7th Cir. 1945). A verdict may be set aside when it is "against the clear weight of the evidence." *E. Tenn. Nat. Gas Co. v. Thomas*, 298 F. App'x 261, 264 (4th Cir. 2008); *see also E. Tenn. Nat. Gas Co. v. 3.04 Acres,* Civil Action No. 07-1443, 2006 WL 197105 (WDVA Oct. 30, 2008) (district court decision in same case wherein new trial as requested and granted where there was no evidence of the fair market value of the property after the taking). As landowners, the Terrys bear the burden of proving the amount of just compensation owed. *United States ex rel. TVA v. Powelson*, 319 U.S. 266, 273 (1943); *United States v. 69.1 Acres*, 942 F.2d 290, 292 (4th Cir. 1991).

The only experts to offer testimony on both the pre-take and post-take value of the property, and thus a diminution of value, were Schweitzer and Thompson. Both of these experts also testified to the highest and best use of the property as residential both before and after the taking. Schweitzer testified to a diminution of $261,033 (30%), and Thompson testified to a diminution of $151,870 (12%). The jury awarded more than twice the higher amount. The landowners requested that the jury apply Schweitzer's percentage of diminution (30%) based on a residential use to Gruelle's before value of $1,900,000 for commercial use as a wind farm, which would result in a value of $570,000.

Several state courts have overturned jury verdicts applying the after value of a witness to the before value of another witness. *See, e.g.*, *Jagow v. E-470 Pub. Highway Auth.*, 49 P.3d 1151, 1161 (Colo. 2002) (finding jury improperly combined incompatible before and after values of two expert witnesses); *Energy Transp. Sys., Inc. v. Mackey*, 674 P.2d 744, 747 (Wyo. 1984) (setting aside verdict where jury took an after value of one witness and applied it to a before value of another

8

witness and reached an "unbelievable" result); *Genge v. City of Baraboo*, 241 N.W.2d 183, 184–85 (Wis. 1976) (holding jury could not take before and after values of different witnesses and award an amount higher than established by either witness).

By way of example, in *Jagow*, the Colorado Supreme Court considered a situation where the landowners' experts testified to their before-taking valuation of the property, but none of those experts testified to an after-taking value. 49 P.3d at 1155. The Highway Authority's expert testified that the remainder property had not been damaged by the project, but rather had benefited from it. *Id.* at 1156. The only evidence of damage to the remainder was testimony that it would cost $100,000 to redo the planning and zoning. *Id.* Nonetheless, the valuation commission awarded $2.88 million for damages to the remainder property. In reviewing the denial of a motion for judgment notwithstanding the verdict, the court found that the $2.88 million award for damages to the remainder property had no support in the evidence and was excessive as a matter of law. *Id.* at 1156. The court reasoned that the award "is not accompanied by sufficient evidence to determine that the difference between the before-taking valuation of the remainder property, provided by Hellerstein's experts, and the after-taking valuation, provided by E-470's expert, was caused by the E-470 Highway project." *Id.* at 1161. According to the court, the commission "could not have determined whether E-470's condemnation caused compensable damages in any amount greater than $100,000, because there was no evidence presented to them to support such finding." *Id.* at 1161. The court explained that it appeared from the record that the commission "incorrectly combined incompatible valuation testimony"—the landowners' before-taking value and the Highway Authority's after-taking value—to "produce a damage amount." *Id.* "The only after-taking value presented to the commission came from E-470's expert, who found that *no damages* occurred to the property in question." *Id.* (emphasis in original). This is akin to what happened in

9

this case, where the Terrys invited the jury to combine valuation testimony from different experts for the before value (Gruelle) and the diminution percentage (Schweitzer).

In *Mackey*, the Wyoming Supreme Court reversed and remanded for a new trial where the jury's determination of the after value was not within the range of evidence. Four expert witnesses testified at trial, and while the jury's before-taking value was within the range of evidence, the jury's after-taking value was not. 674 P.2d at 745. The court explained the problem when a jury takes an "after value" of one witness and applies it to a "before value" of another witness, which could render an "unbelievable" result. *Id.* at 747. "Each witness can use different appraisal methods—income, reproduction, market data. *Each witness can have a different opinion as to the highest and best use—agricultural, residential, commercial, etc.* Each witness can make adjustments for different items—topography, soil, access to utilities, inflation, age of structures, location, etc." *Id.* (emphasis added). As relevant here, Gruelle's before-taking value was based on commercial use, whereas Schweitzer and Thompson based his diminution in value on residential use for the remainder.

And in *Genge*, the Wisconsin Supreme Court found that the "answers of the jury to the two special verdict questions on before-and-after taking values resulted in an award higher than that established by the testimony of any expert witness." 241 N.W.2d at 184–85. The court affirmed the trial court's finding that the jury verdict was excessive. Plaintiffs argued that "the jury could take the before-value of one witness and the after-value of another witness and place their own figures in the verdict somewhere between these values." *Id.* at 184. The court endorsed the trial court's statement that "if such reasoning were used to support a finding of a loss to the property owner testified to by an expert witness, it would lead to an incredible result." *Id.* For example, one expert witness testified that the before-taking value was $39,550, and that the taking resulted in a

10

loss of $1,100 or $1,200; another witness testified that the after-taking value was $15,500. "Using the reasoning advanced by the plaintiffs, this would support a verdict of $24,000, even though three experts testified that the before-taking value of the plaintiffs' entire property was $24,000, $22,000 and $20,000, respectively." *Id.*

Ultimately, the glaring issue with combining the opinions of different appraisers in this case is that Gruelle valued the property based on completely different highest and best use than did Schweitzer and Thompson. Gruelle testified that the highest and best use of the property was as a wind farm. No one testified that the wind farm use was affected in any way by the pipeline, and Gruelle confirmed that Invenergy terminated its arrangement with the Terrys for reasons other than the pipeline. There was no evidence of diminution of value or post-take value regarding any commercial or industrial use. Neither Schweitzer, nor Thompson testified to any commercial values or diminution of any commercial value, and Gruelle did not testify to any residential value of the property—either pre-take or post-take. A jury cannot take a pre-take commercial or industrial highest and best use fair market value and then use a residential diminution in value and residential post-take fair market value to determine just compensation under the circumstances of this case. Given landowners' argument to the jury that it should use incompatible portions of expert testimony to reach its just compensation decision, the court finds that there was no credible evidence to support the verdict and the verdict was not within the range of credited testimony.

Because the jury verdict is not within the range of credited testimony and is against the clear weight of the evidence, MVP is entitled to judgment as a matter of law. The court will grant MVP's motion and enter judgment in the amount of $261,033. This amount is based on Schweitzer's testimony that he appraised the property as having a before-take value of $850,000 and an after-take value of $590,932. This results in just compensation for the permanent taking in the amount of

11

$259,068. In addition, Schweitzer valued the temporary easements at $1,965, which when added to $259,068 results in a total just compensation award of $261,033. *See, e.g., MVP v. 1.89 Acres (Briarwood)*, Civil Action No. 7:19-cv-00078, 2019 WL 6467833, at *3 (W.D. Va. Dec. 2, 2019) (determining just compensation as the difference between an appraiser's valuation of the property before the taking and the appraiser's valuation of the property after the taking, plus the value of the temporary easement).

**C. Motion for a New Trial**

If the court grants a renewed motion for judgment as a matter of law, it must also "conditionally rule on any motion for a new trial by determining whether a new trial should be granted if the judgment is later vacated or reversed." Fed. R. Civ. P. 50(c)(1). A court may grant a new trial on all or some of the issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The court "has a duty to order a new trial if required in order to prevent injustice." *Wilhelm v. Blue Bell, Inc.*, 773 F.2d 1429, 1433 (4th Cir. 1985). Despite the "permissive language" of this rule, the Fourth Circuit has interpreted it to require district courts to "set aside the verdict and grant a new trial" where "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 268 (4th Cir. 2021). The court "may weigh the evidence and consider the credibility of the witnesses" on a Rule 59 motion. *Chesapeake Paper Prods. Co. v. Stone Webster Eng'g Corp.*, 51 F.3d 1229, 1237 (4th Cir. 1995).

MVP is entitled to a new trial for the same reasons it is entitled to judgment as a matter of law: the verdict is against the clear weight of the evidence. The court also notes that granting a new

trial would avoid a miscarriage of justice because the jury's verdict awarding $523,327 in damages was more than twice the highest evidence of diminution in value (Schweitzer's 30% diminution plus the value of the temporary easements resulting in $261,033 in damages). The court will conditionally grant MVP's motion for a new trial with the option of remittitur. *See Eshelman v. Puma Biotechnology, Inc.*, 2 F.4th 276, 285 (4th Cir. 2021) (explaining that the "preferable course, upon identifying a jury's award as excessive, is to grant a new trial *nisi remittitur*, which gives the plaintiff the option of accepting the remittitur or of submitting to a new trial") (citing 11 Wright & Miller, Fed. Practice & Procedure § 2820 (2d ed. 1995)). The upper limit of damages that will "withstand scrutiny" is $261,033. *Id.* (noting the "practical advantage of notifying the parties of the upper limit of damages that will withstand scrutiny, while comporting with the Seventh Amendment" right to a trial by jury).

**D. Motion for Attorney Fees and Costs**

The Terrys move for attorney fees and costs. *See* Fed. R. Civ. P. 54. The court considers this motion to the extent it is not mooted by the court's ruling overturning the jury verdict. Rule 54 requires the moving party to "specify the judgment and the statute, rule, or other grounds entitling the movant to the award." Fed. R. Civ. P. 54(d)(2)(B)(ii). The Terrys argue that they are entitled to costs and fees pursuant to the Equal Access to Justice Act (EAJA). *See* 28 U.S.C. § 2412. To be awarded fees under the EAJA, the civil action must be brought by or against the United States, the claimant must be a "prevailing party," and the position of the United States must not be "substantially justified." *Id.* § 2412(d)(1)(A).

The Terrys' motion will be denied because MVP is not the United States. The EAJA defines "United States" as "any agency and any official of the United States acting in his or her official capacity." *Id.* § 2412(d)(2)(C). The EAJA does not define agency, but the EAJA is found

13

in Title 28 of the United States Code, which defines an agency of the United States as "any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest, unless the context shows that such term was intended to be used in a more limited sense." 28 U.S.C. § 451. Courts apply this definition when determining whether a private corporation, such as MVP, is an "agency" of the United States for purposes of the EAJA. *See, e.g.*, *Dwyer v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 565 F.3d 284, 288–90 (5th Cir. 2009) (reversing award of fees under EAJA because insurance company acting as fiscal agent of United States was not an agency of the United States as defined in 28 U.S.C. § 451). The only way a private corporation can be considered an agency of the United States is if the United States has a proprietary interest in that corporation. *Scott v. Fed. Reserve Bank of Kansas City*, 406 F.3d 532, 534–35 (8th Cir. 2005) (finding that a federal reserve bank was not an agency of the United States under 28 U.S.C. § 451 because the United States did not own stock in the bank and therefore did not have a proprietary interest in the bank). The Terrys have made no showing that the United States has a proprietary interest in MVP.

      The Terrys cite cases involving the Uniform Relocation Assistance and Real Property Acquisition Policies Act (URA). *See* 42 U.S.C. § 4601. These cases are distinguishable because the URA has its own fee shifting provisions, which apply where the "final judgment is that the Federal agency cannot acquire the real property by condemnation" or "the proceeding is abandoned by the United States," *id.* § 4654(a), and defines "federal agency" to include "any person who has the authority to acquire property by eminent domain under Federal law," *id.* § 4601(1). MVP was able to acquire the Terrys' property in this action and did not abandon the proceeding. Moreover, the URA's definition of federal agency does not apply to the EAJA.

      Accordingly, the Terrys' motion for attorney fees and costs will be denied.

III.  CONCLUSION

For the reasons stated herein, the court will issue an appropriate order granting MVP's motions to strike, granting MVP's motion for judgment as a matter of law, vacating the jury verdict and the judgment order entered thereon,[3] conditionally granting MVP's motion for a new trial with the option of remittitur, and denying the Terrys' motion for attorney fees and costs.  The court will also issue an order entering judgment in favor of the Terrys in the amount of $261,033 and vesting title to easements on MVP Parcel No. VA-RO-046.

Entered: April 14, 2023.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge

---

[3] On April 8, 2022, the court entered an order granting judgment and vesting title to easements on MVP Parcel No. VA-RO-046.  (Dkt. No. 106.)  The court stayed execution on the judgment pending rulings on post-trial motions.  (*Id.*)

15